Thomas P. Beko, Esq.
(Bar No. 2653)
ERICKSON, THORPE & SWAINSTON, LTD.
99 West Arroyo Street
P.O. Box 3559
Reno, Nevada 89505
Telephone: (775) 786-3930
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEVADA

BISON CONSTRUCTION, INC., a Nevada corporation, CHURCHILL COUNTY, a political subdivision of the State of Nevada, CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS; a Nevada non-profit corporation; PHILADELPHIA INDEMNITY INSURANCE COMPANY, and NEVADA PUBLIC AGENCY INSURANCE POOL, a political subdivision of the State of Nevada, JOHN MARTIN, and individual, RHONDA MARTIN, an individual.

Plaintiffs,

vs.

MT. HAWLEY INSURANCE COMPANY, AN ILLINOIS CORPORATION

Defendant.
_______________________________________ /

Case No.: 3:11-cv-00669-LRH-VPC

**SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY**

COME NOW, Plaintiffs Bison Construction, Churchill County, Churchill Council on Alcohol and Other Drugs, Philadelphia Indemnity Insurance Company and the Nevada Public Agency Insurance Pool, by and through their attorneys of record, Erickson, Thorpe & Swainston, Ltd., and Thomas P. Beko, Esq., and Paul M. Bertone, Esq., and for their First Amended Complaint against defendant aver as follows:

**JURISDICTIONAL ALLEGATIONS**

1. The plaintiff Bison Construction, Inc. ("Bison") is a Nevada corporation. The Plaintiffs JOHN MARTIN and RHONDA MARTIN are the sole owners and shareholders of Bison Construction, Inc. They were both a named insured, and insured by definition under

the policies of insurance issued by the Mt. Hawley Insurance Company. Pursuant to the laws of the State of Nevada, as a condition to obtaining their State Contractor's License, JOHN MARTIN and RHONDA MARTIN were required to agree to indemnify BISON CONSTRUCTION, INC., for any and all liability said entity may incur.

2. The plaintiff Churchill County is a political subdivision of the State of Nevada which, at all times relevant hereto, owned certain real property and improvements in the County of Churchill, State of Nevada, commonly known as 165 North Carson Street. A portion of the improvements owned by the County of Churchill were damaged or destroyed in a fire which occurred on or about March 26, 2007. On or about February 19, 2009, Churchill County, in conjunction with others, commenced a civil action against the Bison Construction Company and others seeking to recover damages for losses suffered as a result of the fire of March 26, 2007. On or about November 1, 2010, Churchill County entered into a settlement agreement with Bison Construction pursuant to which Bison Construction agreed to the entry of a stipulated judgment against it and to assign to Churchill County (and others) all its rights against the defendant Mt. Hawley Insurance Company. This was a settlement entered into in good faith and for reasonable consideration. This settlement was necessitated by Mt. Hawley's wrongful refusal to defend or indemnify Bison Construction.

3. The plaintiff Churchill Council on Alcohol and Other Drugs is a Nevada non-profit corporation which at all times relevant hereto owed a portion of the improvements commonly known as 165 North Carson Street, Fallon, Nevada, which were damaged or destroyed in a fire which occurred on or about March 26, 2007. On or about February 19, 2009, Churchill Council on Alcohol and Other Drugs, in conjunction with others, commenced a civil action against the Bison Construction Company and others seeking to recover damages for losses suffered as a result of the fire of March 26, 2007. On or about November 1, 2010, Churchill Council on Alcohol and Other Drugs entered into a settlement agreement with Bison Construction pursuant to which Bison Construction agreed to the entry of a stipulated judgment against it and to assign to Churchill Council on Alcohol and Other

Drugs (and others) all its rights against the defendant Mt. Hawley Insurance Company. This was a settlement entered into in good faith and for reasonable consideration. This settlement was necessitated by Mt. Hawley's wrongful refusal to defend or indemnify Bison Construction.

4. The plaintiff Philadelphia Indemnity Insurance Company is a foreign corporation licensed to do, and doing business in the State of Nevada as a property and casualty insurance company. The plaintiff Philadelphia Indemnity Insurance Company issued insurance coverage to the Churchill Council on Alcohol and Other Drugs on the premises commonly known as 165 North Carson Street, Fallon, Nevada. Following the fire which occurred on or about March 26, 2007, the Philadelphia Indemnity Insurance Company provided insurance benefits to the Churchill Council on Alcohol and Other Drugs. Thereafter, the Philadelphia Indemnity Insurance Company, as subrogee of the Churchill Council on Alcohol and Other Drugs, and in conjunction with others, commenced a civil action against the plaintiff Bison Construction and others. On or about November 1, 2010, Philadelphia Indemnity Insurance Company entered into a settlement agreement with Bison Construction pursuant to which Bison Construction agreed to the entry of a stipulated judgment against it and to assign to the Philadelphia Indemnity Insurance Company (and others) all its rights against the defendant Mt. Hawley Insurance Company. This was a settlement entered into in good faith and for reasonable consideration. This settlement was necessitated by Mt. Hawley's wrongful refusal to defend or indemnify Bison Construction.

5. The Nevada Public Agency Insurance Pool is a political subdivision of the State of Nevada which, at all times relevant hereto, provided insurance coverage to the County of Churchill, and specifically for some of those premises commonly known as 165 North Carson Street, Fallon, Nevada. Following a fire which occurred on or about March 26, 2007, the Nevada Public Agency Insurance Pool paid, or became obligated to pay, certain benefits to the County of Churchill. On or about February 19, 2009, the Nevada Public Agency Insurance Pool, as subrogee in conjunction with others, commenced a civil action

against the Bison Insurance Company and others seeking to recover damages for losses suffered as a result of the fire of March 26, 2007. On or about November 1, 2010, the Nevada Public Agency Insurance Pool entered into a settlement agreement with Bison Construction pursuant to which Bison Construction agreed to the entry of a stipulated judgment against it and to assign to the Nevada Public Agency Insurance Pool (and others) all its rights against the defendant Mt. Hawley Insurance Company. This was a settlement entered into in good faith and for reasonable consideration. This settlement was necessitated by Mt. Hawley's wrongful refusal to defend or indemnify Bison Construction.

6. Defendant Mt. Hawley Insurance Company ("Mt. Hawley") is an Illinois company, who at all times relevant was transacting business in the State of Nevada as an insurance company.

7. When the plaintiffs Churchill County, Churchill Council on Alcohol and Other Drugs, Philadelphia Indemnity Insurance Company, and the Nevada Public Agency Insurance Pool entered into the settlement agreement with Bison Construction, they did so based upon information and representations (related to insurance policy language and forms) which had been repeatedly and consistently made by Mt. Hawley. In making these representations, Mt. Hawley knew, and should have known, that the plaintiffs and others would rely to their detriment upon these representations. The plaintiffs Churchill County, Churchill Council on Alcohol and Other Drugs, Philadelphia Indemnity Insurance Company, and the Nevada Public Agency Insurance Pool did, in fact, rely upon Mt. Hawley's representations.

8. Mt. Hawley is listed as an active, unauthorized carrier by the Nevada Surplus Lines Association, and is subject to the jurisdiction of this court and Nevada law pursuant to NRS 685A.100 and 685A.200.

9. The conduct at issue took place in Washoe County, Nevada.

10. This Court has jurisdiction over the parties and the dispute.

11. Venue lies in this Court.

///

**GENERAL ALLEGATIONS**

12. Prior to January 10, 1997, Churchill County owned real property ("Property") in Fallon, Nevada that it leased to Churchill Council on Alcohol & Other Drugs ("Churchill Council") for use as a substance abuse rehabilitation facility known as the "New Frontier Treatment Center."

13. Prior to January 10, 1997, a single story building was located on the Property.

14. In 1996, Churchill Council hired plaintiff Bison to construct a two story addition to the existing building on the Property. This construction project was referred to as the "New Frontier Facility Expansion Project" ("Project").

15. On or about January 10, 1997, plaintiff Bison entered into a Construction Subcontract with AAA Fire Sprinkler Corporation ("AAA") whereby AAA agreed to plan, design and install a wet pipe automatic fire sprinkler system in the Project. A true and correct copy of the Construction Subcontract is attached as Exhibit 1 and is incorporated by reference.

16. The 1997 construction Project consisted of building a new two-story structure and attaching it to the existing one-story building.

17. During construction of the Project, the decision was made to omit fire suppression sprinklers from the crawl space of the new two-story building.

18. Over ten years after entering into the Construction Subcontract, on March 26, 2007, a fire ("Fire") erupted in the crawl space of the two-story building constructed by Bison.

19. There were no fire suppression sprinklers in the crawl space to control and/or extinguish the Fire.

20. The absence of fire suppression sprinklers in the crawl space allowed the Fire to spread rapidly and uncontrollably until it destroyed the two-story building built by Bison and its contents and caused substantial damage to the one-story building.

21. At the time of the Fire, Churchill County insured its interests in the Property

through insurance coverage provided by Nevada Public Agency Insurance Pool ("NPAIP").

22. At the time of the Fire, Churchill Council leased the Property from Churchill County.

23. At the time of the Fire, Churchill Council insured its interests in the Property through an insurance policy written by Philadelphia Indemnity Insurance Company ("Philadelphia").

24. Churchill County and Churchill Council sustained damage to their respective properties and business as a result of the Fire.

25. Churchill County and Churchill Council submitted insurance claims to NPAIP and Philadelphia, respectively.

26. NPAIP and Philadelphia provided insurance coverage for damages caused by the Fire and thereby became subrogated to the interests of their respective policy holders up to the amount of these payments.

27. Churchill County and Churchill Council sustained losses from the Fire that were not covered by insurance.

28. On or about February 19, 2009, Churchill County, Churchill Council, NPAIP and Philadelphia filed a lawsuit against Bison, AAA and others ("Litigation") seeking damages caused by the Fire in excess of $2,266,655.53. A true and correct copy of that Complaint is attached as Exhibit 2.

29. The Complaint asserted that the omission of fire suppression sprinklers violated Nevada state fire codes and that each defendant was liable pursuant to various theories.

30. The Complaint alleged that Bison was actively negligent in the omission of fire suppression sprinklers from the subject building's crawl space.

31. On or about December 31, 2006, Bison purchased a liability insurance policy ("Policy"), from Mt. Hawley.

32. The Policy is a contract of adhesion.

33. The Policy was in place at the time of the Fire.

34. Bison tendered its defense and indemnity regarding the Litigation to Mt. Hawley.

35. Mt. Hawley agreed to provide a defense in the Litigation to Bison pursuant to the Policy and hired counsel to defend Bison.

36. Mt. Hawley filed an Answer on behalf of Bison on April 9, 2009.

37. Five months later, on August 10, 2009, Mt. Hawley withdrew coverage from Bison because Bison had not, as per the "Contractors -- Conditions of Coverage" (hereinafter CCC Endorsement), complied with a provision which required that Bison "will be named as additional insured on all subcontractors general liability policies." Mt. Hawley informed Bison that the purpose of this provision was "to shift liability from Bison and Mt. Hawley to those subcontractors whose work potentially creates liability for Bison and their insurance carriers."

38. Bison's subcontract for the "Project" included a provision at paragraph 1 which required AAA Fire Sprinkler Corporation ("AAA") "to indemnify and save owner and contractor [Bison Construction] harmless for all claims for damages to persons and property growing out of the execution of the work." Bison's subcontract with AAA further required AAA to evidence its insurance by "certification filed with the contractor."

39. The provision of Bison's subcontract with AAA Fire Sprinkler Corporation which required "AAA" to indemnify and save owner and contractor [Bison Construction] harmless for all claims for damages to persons and property growing out of the execution of the work fulfilled the purpose of the Conditions of Coverage as Mt. Hawley expressly stated in its August 10, 2009 letter to Bison. Mt. Hawley confirmed in letters dated September 10, 2009, October 8, 2009, and November 2, 2009, that the Contractor-Conditions of Coverage was designed to shift liability from Bison and Mt. Hawley to those subcontractors whose work potentially creates liability for Bison and their insurance carriers.

40. At the time that AAA Fire Sprinkler Corporation entered into its subcontract with Bison Construction, "AAA" had liability coverage equal to or greater than the coverage

afforded to Bison Construction by the Mt. Hawley policy of insurance.

41. Had AAA Fire Sprinkler Corporation named Bison Construction as an additional insured during the period of the 1996-1997 construction, that policy would not have provided coverage to Bison for a fire which occurred in 2007, or for litigation which occurred in 2009.

42. During the course of the "Litigation," AAA Fire Sprinkler Corporation paid to the plaintiffs (except Bison Construction), the sum of $950,000.00 in satisfaction of all claims asserted against "AAA".

43. In its August 10, 2009 letter, Mt. Hawley ignored the allegations of active negligence against Bison. Mt. Hawley also ignored evidence of the independent negligence of Bison (exclusive of any negligence of any subcontractor) and/or facts indicating the independent negligence of Bison which may have been uncovered through any reasonable investigation.

44. In its August 10, 2009 letter, Mt. Hawley threatened to "seek reimbursement of all fees and costs [Mt. Hawley] has incurred on Bison's behalf" and instructed Bison to "take whatever steps it deems appropriate to protect its interests in the referenced matter." Neither Mt. Hawley's policy of insurance, nor any endorsement thereto, authorized or permitted Mt. Hawley to recover from Bison its costs or fees incurred on behalf of Bison.

45. In a letter dated September 8, 2009, Mt. Hawley again threatened to sue Bison "to recover its defense fees and costs it has paid on Bison's behalf" unless Bison agreed to waive all claims under the Policy.

46. In a letter dated September 10, 2009, Mt. Hawley again stated it would "soon proceed with an action against Bison to recover those fees and costs that Mt. Hawley has already incurred on Bison's behalf" unless Bison immediately agreed to waive all claims against Mt. Hawley under the Policy.

47. In a letter dated November 2, 2009, Mt. Hawley yet again threatened to sue Bison unless Bison agreed to waive its claims under the Policy.

48. On December 24, 2009, more than eight months after it agreed to defend Bison, and while the Litigation was ongoing, Mt. Hawley withdrew coverage from Bison and defense counsel appointed by Mt. Hawley withdrew representation of Bison.

49. Specifically, Mt. Hawley took the position that the Policy was void because Bison had not required AAA to name Bison as an additional insured of each liability policy purchased by AAA since the 1997 Project began until the date of the Fire on March 26, 2007.

50. In a matter previous to the "Litigation," entitled *Stor Time Storage v. Cuneo*, filed in the Second Judicial District Court, County of Washoe State of Nevada, case number CV07-01272, Mt. Hawley had initially provided a defense to Bison Construction, and thereafter withdrew that defense. Mt. Hawley also informed Bison that it had the right to seek recovery of costs and fees it incurred in defending Bison, and that Mt. Hawley would seek to recover those costs and fees if Bison did not sign an agreement waiving any claims against Mt. Hawley. Bison thereafter signed a Settlement and Mutual Release Agreement which was similar to that which Mt. Hawley sent to Bison on November 2, 2009.

51. The plaintiffs are informed and believe and thereupon allege that Mt. Hawley has made it a pattern and practice to initially provide coverage to its insureds and thereafter threaten to seek recovery of its incurred costs as a means by which to eliminate its legal exposure for defense costs, indemnity obligations and ex contractual liability to its insureds.

52. In January 1997, when the Construction Contract was executed, it was not the custom or usage in the construction industry to require subcontractors to name general contractors as additional insureds.

53. In January 1997, when the Construction Contract was executed, if a construction contract required a subcontractor to name the general contractor as an additional insured, the custom or usage in the industry was for the requirement to extend only to the insurance policy in place during the course of construction, not to every insurance policy purchase thereafter.

54. Years after 1997, as construction defect litigation became more prevalent in

Erickson, Thorpe

Northern Nevada, it became the custom and usage of the construction industry to require subcontractors to name general contractors as additional insureds of those policies in place during the course of construction.

55. It has never been the custom or usage in the construction industry in Northern Nevada for subcontractors to name general contractors as additional insureds on every policy purchased by the subcontractor after the project's completion.

56. In the current construction industry, some general contractors request their subcontractors to name the general contractors as additional insureds on policies purchased by the subcontractor after the project's completion, but in those cases, the custom and usage is not to require subcontractors to do so indefinitely; rather, the custom and usage is for the subcontractor to name the general contractor as an additional insured during the contract warranty period of no more than two years post completion.

57. Mt. Hawley denied defense and indemnity coverage under the Policy to Bison because Bison was unable to perform the impossible task of rewriting history.

58. Mt. Hawley denied defense and indemnity coverage to Bison because Bison failed to do something nearly ten years prior to the Policy's inception that was contrary to the custom and usage in the construction industry then and now.

59. As a liability insurer of general contractors, Mt. Hawley had actual and constructive knowledge of the custom and usage in the construction industry with respect to subcontractor obligations to name general contractors as additional insured as they existed in 1997 and as they existed between 1997 and December 31, 2006, when Mt. Hawley sold the Policy to Bison.

60. When it sold the Policy to Bison, Mt. Hawley knew that typical liability coverage in contractor insurance policies is triggered by the occurrence of property damage, which often occurs many years after the completion of the work that gives rise to the liability claim.

61. When it sold the Policy to Bison, Mt. Hawley knew that it may be called upon

to provide coverage for damages caused by work completed long before the Policy's inception date.

62. When it sold the Policy to Bison, Mt. Hawley knew that it was impossible for Bison to retroactively amend its subcontracts on completed construction projects to require those subcontractors to go back and add Bison as an additional insured on all their liability insurance policies.

63. When it sold the Policy to Bison, Mt. Hawley knew that it was impossible for Bison to retroactively amend the 1997 Construction Subcontract to require AAA to go back and add Bison as an additional insured on all AAA's liability insurance policies from the date of construction to the date of the Fire's occurrence in March 26, 2007.

64. When it sold the Policy to Bison, Mt. Hawley knew that Bison would interpret the additional insured language to apply to only those contracts within its control; those executed after the Policy's purchase.

65. When it sold the Policy to Bison, Mt. Hawley knew that Bison may be exposed to liability for work completed during periods of time when the construction industry custom and usage was (1) not to require subcontractors to name general contractors as additional insureds, (2) to require subcontractors to name general contractors as additional insureds only on those policies in place during the course of construction, and (3) not to require subcontractors to name subcontractors as additional insureds on every single liability insurance policy in place from the date of the project's completion forward.

66. When it sold the Policy to Bison, Mt. Hawley knew that it intended to rely on the additional insured requirement in its Policy to deny coverage for claims arising from work completed prior to the Policy's date of inception because based on the custom and usages of the industry, those old contracts would almost certainly not comply with the Mt. Hawley's interpretation of the additional insured language in the Policy.

67. When it sold the Policy to Bison, Mt. Hawley knew that it intended to interpret the ambiguous Policy in a manner contrary to the ordinary insured's understanding of liability

insurance, contrary to Bison's understanding of liability insurance, contrary to the custom and usage in the insurance industry, and in contravention of the reasonable expectations of Bison.

68. When it sold the Policy to Bison, Mt. Hawley knew that neither Bison nor any reasonable contractor would purchase the Policy if either understood how Mt. Hawley intended to interpret the additional insured language in the Policy and consequently Mt. Hawley intentionally and purposefully kept that information from Bison.

69. When it sold the Policy to Bison, Mt. Hawley knew that Bison and all reasonable policy holders had a reasonable expectation of liability insurance coverage for liability arising from allegations that its negligent acts or omission caused a catastrophic fire during the policy period.

70. When Mt. Hawley sold the Policy to Bison, the ordinary custom and usage in the insurance industry was that a liability policy would provide defense coverage for claims asserting that the contractor's work caused a catastrophic fire during the policy period.

71. When it sold the Policy to Bison, Mt. Hawley did not inform Bison that Mt. Hawley intended to interpret the additional insured requirements in its Policy unreasonably broadly to deny Bison coverage based on contracts executed many years prior to the Policy's inception in conformance with customs and usages contemporary to the era in which those contracts were signed.

72. No reasonable general contractor would agree to purchase a liability insurance policy that failed to provide coverage based on contracts executed many years prior to the Policy's inception in conformance with customs and usages contemporary to the era in which those contracts were signed.

73. Mt. Hawley knew that no reasonable general contractor would agree to purchase a liability insurance policy that failed to provide coverage based on contracts executed years prior to the Policy's inception in conformance with customs and usages contemporary to the era when the contracts were signed and consequently Mt. Hawley intentionally and purposefully withheld this information from Bison in order to induce Bison

to purchase the Policy.

74. Mt. Hawley intended to and did withhold its plan to withhold coverage from Bison until after Mt. Hawley had collected insurance premiums from Bison and Bison was in the vulnerable position of facing substantial exposure to liability.

75. Before Mt. Hawley withdrew coverage from Bison, the plaintiffs in the Litigation offered to settle all claims against Bison for Mt. Hawley's policy limits and thereby protect Bison from exposure to uninsured damages.

76. Mt. Hawley ignored all settlement offers by plaintiffs in the Litigation.

77. It was unfair and unreasonable for Mt. Hawley to refuse to defend Bison in the Litigation.

78. It was unfair and unreasonable for Mt. Hawley to refuse to indemnify Bison in the Litigation.

79. It was unfair and unreasonable for Mt. Hawley to refuse to protect Bison from a judgment in excess of its insurance policy limit.

80. It was unfair and unreasonable for Mt. Hawley to repeatedly threaten to sue Bison unless and until Bison waived its right of coverage under the Policy.

81. Mt. Hawley wrongfully delayed its declination of coverage and waived the right to deny coverage or should be estopped from so doing.

82. Mt. Hawley wrongfully caused Bison to face catastrophic liability with no insurance coverage.

83. Mt. Hawley wrongfully deprived Bison of the benefit of its bargain and reasonable expectations of coverage.

84. Mt. Hawley wrongfully caused the owners of Bison to suffer emotional distress and upset.

85. Mt. Hawley exposed Bison to threats of litigation from an insurer who had, by providing a defense, acquired sensitive financial information about Bison that Bison could not afford litigation against an insurance company while simultaneously defending itself in

the Litigation.

86. Mt. Hawley wrongfully exposed Bison to liability in excess of its insurance policy limits.

87. Mt. Hawley forced its insured to incur defense costs and fees, which should have been provided under the insurance policy.

88. Upon information and belief, Mt. Hawley has used similar tactics with other policy holders, including Bison, as part of a pattern and practice to deprive policy holders of fair and reasonable coverage under their insurance policies.

89. To protect itself from the wrongful denial of coverage by Mt. Hawley, Bison had no choice but to enter into a Stipulated Judgment Against Bison Construction ("Judgment") on December 16, 2010 in the amount of $1,437,350.57, a true and correct copy of which is attached as Exhibit 3.

## FIRST CLAIM FOR RELIEF

**(Bad Faith)**

90. The above allegations are incorporated by reference.

91. Implied in the Policy is the implied covenant of good faith and fair dealing.

92. Mt. Hawley owed Bison and its owners a duty arising out of their special relationship, which is similar to a fiduciary duty.

93. Mt. Hawley owed Bison and its owners a duty of equal consideration.

94. Mt. Hawley knowingly or recklessly refused to give equal consideration to Bison with respect to settlement offers.

95. Mt. Hawley knowingly or recklessly denied or delayed coverage owed to Bison and its owners.

96. Mt. Hawley knowingly or recklessly adopted an unreasonably broad and unfair interpretation of an ambiguous policy exclusion in direct contravention of the reasonable expectations of Bison and its owners and in contravention of construction customs and usages.

97. Mt. Hawley had an actual or implied awareness of the absence of a reasonable basis for denying the benefits of the policy.

98. In Nevada, an insurer bears the duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. Any doubt about whether a duty to defend arises must be resolved in favor of the insured. Once that duty to defend is triggered, it continues throughout the course of the litigation against the insured.

99. At the time Mt. Hawley, through its coverage counsel, Attorney Michael Melendez, terminated the defense being provided to its insured, Bison, Mt. Hawley knew there existed at least the potential for coverage, or recklessly disregarded the potential for coverage and concomitant duty to defend.

100. Attorney Michael Melendez had previously served as coverage counsel for Mt. Hawley in an action filed within the U.S. District Court for the Central District of California, entitled *North American Capacity Insurance Company v. Mt. Hawley Insurance Company,* 5:05-cv-00737, wherein the central coverage dispute also concerned retrospective application of Mt. Hawley's CCC Endorsement to a construction project completed years before the inception of the policy.

101. After extensive briefing on the issue, that U.S. District Court for the Central District of California granted summary judgment against Mt. Hawley and determined that the CCC Endorsement did not apply to construction projects which had been completed years prior to the inception of the policy. (*See* Exhibit 3, Minute Order, Doc. #62, dated August 30, 2006; Exhibit 4, Stipulation for Dismissal acknowledging and accepting duty to defend as per Court's Order, signed by Attorney Michael Melendez, Doc. #64, filed November 21, 2006.)

102. On information and belief, the central coverage issues and policy provisions ruled upon in the above-described federal litigation in the Central District of California were substantially similar, if not identical to, those present between Bison and Mt. Hawley in the current dispute.

103. As a result of the above-described adverse federal ruling, as well as other potentials for coverage which were ignored, Attorney Michael Melendez and Mt. Hawley knew (or recklessly disregarded) that there was at least possible or arguable coverage and the potential that the CCC Endorsement would not apply to Bison's construction project (damaged in the fire) which had been completed in or about 1997.

104. In spite of this direct knowledge of the potential for coverage, or in reckless disregard for the potential of coverage, Mt. Hawley terminated the defense of its insured, mid-litigation, and then repeatedly threatened to sue Bison to recover defense costs if Bison would not agree to waive all rights against Mt. Hawley. These actions constitute bad faith and are part of a pattern of practice, including prior instances with regard to Bison Construction.

105. Mt. Hawley now seeks to deny coverage and support its actions vis-a-vis the plaintiff by utilizing language from a different policy form which is dramatically different than that which it repeatedly quoted to Bison Construction. Mt. Hawley has engaged in such conduct knowing that it would be estopped from relying upon language which is different than that which it affirmatively represented to its insured.

106. Mt. Hawley knowingly and intentionally sold Bison illusory insurance coverage.

107. Mt. Hawley knowingly and intentionally conditioned coverage on impossible conditions.

108. Mt. Hawley knowingly and intentionally conditioned coverage on false and misleading information and industry practices.

109. Mt. Hawley knowingly and intentionally interpreted policy provisions in violation of Nevada public policy of protecting policy holders to ensure they are treated fairly and equitably by insurance companies and prevent insurance companies from misleading, arbitrary, unfair and monopolistic practices.

110. As a direct and proximate consequence of Mt. Hawley's bad faith, Bison was

forced to enter into the stipulated judgment attached as Exhibit 3.

111. As a direct and proximate consequence of Mt. Hawley's bad faith, Bison sustained general and special damages in an amount to be proven at trial. As a further direct and proximate consequence of Mt. Hawley's bad faith actions, the Plaintiffs JOHN MARTIN and RHONDA MARTIN suffered, and continued to suffer, severe emotional distress, anxiety, worry and suffering and as such are entitled to an award of damages in an amount in excess of $10,000.00, the exact amount of which is to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**(Fraud)**

112. The above allegations are incorporated by reference.

113. Mt. Hawley made false and misleading representations and/or omissions to Bison related to the scope of coverage afforded under the Policy.

114. Mt. Hawley knew that its representations and/or omissions to Bison and its owners were false.

115. Mt. Hawley intentionally led Bison and its owners to believe that the Policy would provide coverage for occurrences like the Fire.

116. Mt. Hawley did not advise Bison or its owners that Mt. Hawley intended to apply the additional insured provisions in the Policy retroactively to contracts executed prior to the inception of the Policy.

117. Mt. Hawley intended its misrepresentations to induce Bison to purchase the Policy.

118. Bison and its owners justifiably relied on the false representations and omissions of Mt. Hawley and purchased the Policy with the reasonable expectation that the Policy would provide defense and liability coverage for occurrences like the Fire.

119. Bison's reliance was reasonable.

120. As a direct and proximate consequence of Mt. Hawley's fraud, Bison sustained general and special damages in an amount to be proved at trial.

121. As a direct and proximate consequence of Mt. Hawley's fraud, Bison was forced to enter into the stipulated judgment attached as Exhibit 3.

122. As a direct and proximate consequence of Mt. Hawley's fraud, Bison sustained damages in an amount to be proven at trial. As a further direct and proximate consequence of Mt. Hawley's bad faith actions, the Plaintiffs JOHN MARTIN and RHONDA MARTIN suffered, and continued to suffer, severe emotional distress, anxiety, worry and suffering and as such are entitled to an award of damages in an amount in excess of $10,000.00, the exact amount of which is to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Judgment)**

123. The above allegations are incorporated by reference.

124. A justiciable dispute exists between Bison and Mt. Hawley regarding insurance coverage for the Fire.

125. Bison is entitled to a declaration that the Policy provides defense and indemnity coverage for the Fire.

126. Bison is entitled to a declaration that the CCC Endorsement within the policy and additional-insured provision therein applies only to contracts executed after the Policy's inception.

127. Bison is entitled to a declaration that the provision within the Contractors-Conditions of Coverage that the insurer need not demonstrate any prejudice in order to eliminate coverage is void as against the public policy of the State of Nevada.

128. Bison is entitled to a declaration that the provision within the Contractors-Conditions of Coverage which allows an insurer to deny coverage based upon the insured's failure to undertake actions which occurred years prior to the period of coverage is void as against the public policy of the State of Nevada.

129. Bison is entitled to a declaration that the provision within the Contractors-Conditions of Coverage which allows an insurer to deny coverage based upon the non-

Erickson, Thorpe

occurrence of events which would not have any effect upon the insurer or insured's rights would violate the public policy of the State of Nevada.

130. Bison is entitled to a declaration that the provision within the Contractors-Conditions of Coverage which would allow an insurer to deny coverage when the insured has fully satisfied the expressly stated purpose for the existence of a provision would violate the public policy of the State of Nevada.

131. Bison is entitled to a declaration that the CCC Endorsement in the policy and additional-insured provision therein is ambiguous, especially regarding its application to construction projects completed years or decades prior to the inception of the policy.

132. Bison is entitled to a declaration that the CCC Endorsement in the policy and additional-insured provision therein is void as against public policy.

133. Bison is entitled to a declaration that the CCC Endorsement in the policy and additional-insured provision therein is unconscionable.

134. Bison is entitled to a declaration that the additional insured provision within the CCC endorsement imposes an impossible condition rendering coverage under the Policy illusory and void as against the public policy of the State of Nevada.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Contract)**

135. The above allegations are incorporated by reference.

136. The Policy provided Bison defense coverage for the Fire.

137. The Policy provided Bison indemnity coverage for the Fire.

138. Mt. Hawley breached the Policy when it failed to provide Bison with a defense in the Litigation.

139. Mt. Hawley breached the Policy when it failed to provide Bison with indemnity in the Litigation.

140. Bison sustained foreseeable damages as a consequence of Mt. Hawley's breach of the Policy.

141. As a result of Mt. Hawley's breach of contract, it has waived all policy limits of the Policy and is liable for the full amount of the stipulated judgment attached hereto.

142. Bison is entitled to a judgment against Mt. Hawley in an amount to be proved at trial.

**FIFTH CLAIM FOR RELIEF**

**(Deceptive Trace Practices)**

143. The above allegations are incorporated by reference.

144. Mt. Hawley knowingly made false representations to Bison and its owners as to the characteristics, uses and benefits of the Policy in violation of N.R.S. § 598.0915(5).

145. Mt. Hawley represented that the Policy met the custom and ordinary standards for such liability insurance when it knew and intended to interpret the Policy so as to be of another standard in violation of N.R.S. § 598.0915(7).

146. Mt. Hawley knowingly made false representations to Bison and its owners regarding the Policy in violation of N.R.S. § 598.0915(15).

147. Mt. Hawley knowingly failed to disclose material facts in connection with the sale of the Policy in violation of N.R.S. § 598.0923(2).

148. As a direct and proximate consequence of Mt. Hawley's deceptive trade practices, Bison purchased the Policy.

149. As a direct and proximate consequence of Mt. Hawley's deceptive trade practices, Bison and its owners found themselves without insurance when facing catastrophic liability in the Litigation, and was forced to enter into a stipulated judgment to protect its interests.

150. As a direct and proximate consequence of Mt. Hawley's deceptive trade practices, Bison sustained general and special damages in an amount to be proven at trial. As a further direct and proximate consequence of Mt. Hawley's bad faith actions, the Plaintiffs JOHN MARTIN and RHONDA MARTIN suffered, and continued to suffer, severe emotional distress, anxiety, worry and suffering and as such are entitled to an award of

damages in an amount in excess of $10,000.00, the exact amount of which is to be proven at trial.

**SIXTH CLAIM FOR RELIEF**

**(Unfair Claims Practices)**

151. The above allegations are incorporated by reference.

152. Mt. Hawley misrepresented to Bison pertinent facts or insurance policy provisions relating to coverage for the Litigation in violation of N.R.S. § 686A.310(1)(a).

153. In seeking to force Bison to sign a waiver of rights against Mt. Hawley under threat of suit for reimbursement of defense costs, Mt. Hawley violated NAC 686A.660(5) which provides that no insurer may request a first-party claimant to sign a release which extends beyond the condition or occurrence which gave rise to the claim payment, or violated the "catch all" provision at NAC 686A.600(3).

154. Mt. Hawley failed to affirm or deny coverage to Bison within a reasonable time in violation of N.R.S. § 686A.310(1)(d) and in violation of NAC 686A.675.

155. Mr. Hawley failed to effectuate prompt, fair and equitable settlement of claims in which liability of the insurer had become reasonably clear in violation of NRS 686A.310(1)(e).

156. Mt. Hawley failed to provide promptly to Bison a reasonable explanation of the declination of coverage in violation of N.R.S. § 686A.310(1)(n).

157. Mt. Hawley is liable to Bison for Bison's damages as a result of Mt. Hawley's unfair practices as set forth in N.R.S. § 686A.310(2).

158. As a direct and proximate consequence of Mt. Hawley's unfair claim practices, Bison purchased the Policy.

159. As a direct and proximate consequence of Mt. Hawley's unfair claim practices, Bison found itself without insurance when facing catastrophic liability in the Litigation, and was forced to enter into a stipulated judgment to protect its interests.

160. As a direct and proximate consequence of Mt. Hawley's unfair claim practices,

Bison sustained general and special damages in an amount to be proved at trial.

**SEVENTH CLAIM FOR RELIEF**

**(Punitive Damages)**

161. The above allegations are incorporated by reference.

162. Mt. Hawley is guilty of oppression, fraud or malice, express or implied.

163. Mt. Hawley willfully, intentionally and recklessly engaged in the conscious disregard for the rights of others which constitutes an act of subjecting Bison to cruel and unjust hardship.

164. The plaintiffs are entitled to an award of punitive damages against the defendant in an amount to be proved at trial in conjunction with all claims except those for breach of contract, declaratory judgment and promissory estoppel.

**EIGHTH CLAIM FOR RELIEF**

**(Promissory Estoppel/Waiver)**

165. The above allegations are incorporated by reference.

166. The defendant Mt. Hawley made material representations of fact regarding the provisions and purpose for said provisions of its policy when it knew, or should have known, that the plaintiffs would rely to their detriment upon those representations.

167. The plaintiffs, and each of them, did rely to their detriment upon the representations made by Mt. Hawley.

168. Mt. Hawley has waived any right to claim policy language other than that which it repeatedly represented to Bison and others, and/or Mt. Hawley should be estopped from claiming its policy has any language different than that which it repeatedly represented to Bison and others.

WHEREFORE, Plaintiffs request judgment against Mt. Hawley and awarding Plaintiffs:

A. An amount equal to the stipulated judgment;

B. Compensatory damages in an amount to be proved at trial;

C. Damages for emotional upset to Bison's owners;

D. Punitive damages as allowed by N.R.S. § 42.005;

E. Declaration that the Policy provided defense coverage for the Fire;

F. Declaration that the Policy provided indemnity coverage for the Fire;

G. Declaration as set forth above;

H. Pre-judgment interest at the prevailing statutory rate;

I. Attorney's fees as authorized by law, including special damages arising from tortious bad faith and/or breach of insurance contract, and under NRS 18.010(2)(b).

J. Post-judgment interest at the prevailing statutory rate; and

K. Such additional relief as this Court may deem warranted under the circumstances.

The Plaintiffs further demand a trial by jury.

**THE UNDERSIGNED HEREBY AFFIRMS THAT THE PRECEDING DOCUMENT DOES NOT CONTAIN THE SOCIAL SECURITY NUMBER OF ANY PERSON PURSUANT TO NRS 239B.030.**

DATED this 9th day of April, 2012.

ERICKSON, THORPE & SWAINSTON, LTD.

By: ______________________________
THOMAS P. BEKO, ESQ.
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of ERICKSON, THORPE & SWAINSTON, LTD. and that on this day I personally served a true and correct copy of the attached document by:

- ☒ U.S. Mail
- ☐ Facsimile Transmission
- ☐ Personal Service
- ☐ Messenger Service
- ☒ CMECF

addressed to the following:

Phillip M. Stone, Esq.
6900 S. McCarran Blvd., Suite 2040
Reno, NV 89509

Donald Wayne Carlson, Esq.
Michael C. Cooper, Esq.
Margaret Allen, Esq.
Carlson, Calladine & Peterson
353 Sacramento Street, 16th Floor
San Francisco, CA 94111
*Attorneys for Defendant*

DATED this 9th day of April, 2012.

Brittany Cooper

EXHIBIT 1

EXHIBIT 1

BISON CONSTRUCTION
P.O. Box 3469 • 1650 Slide View Ct • Carson City, Nevada 89702 • Phone (702) 849-1050 • FAX (702) 849-1684

# CONSTRUCTION SUBCONTRACT

Contractors are required by law to be licensed and regulated by the Contractors' State License Board. Any question concerning a contractor may be referred to the register of the board whose address is: Nevada State Contractors Board, Reno, Nev.
70 Linden Street Reno, Nevada 89502

Date: January 10, 1997
Contractor's License No: 25903 & 15006A

SIR,

The undersigned, hereinafter referred to as "Subcontractor," agrees to furnish at its own expense all the labor and materials necessary to complete in a good and workmanlike manner the following: FURNISH ALL LABOR & MATERIALS PER YOUR QUOTE DATED NOV. 7, 1996 WHICH BECOMES PART OF THIS CONTRACT, TO ACCOMPLISH THE DESCRIBED INSTALLATION OF THE COMPLETE FIRE SPRINKLER SYSTEM TO 5'-0" STUB-OUT AS SHOWN ON THE PLANS & SPECIFICATIONS FOR THE NEW BUILDING AND REPAIRS AS DESCRIBED ON THE EXISTING BUILDING.

situated upon said real property hereinafter described CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS, NEW FRONTIER FACILITY located at 165 North Carson Street, FALLON, NEVADA.
Said work to be done and material furnished therefore, in conformity with the plans and specifications for the same prepared by SCOT BARBOUR ARCHITECT all of which are incorporated herein by reference. In connection with the foregoing Subcontract, the parties hereto mutually agree as follows:

1. Sub-contractor to furnish certificates of workman's compensation as required by law, public liability and property damage insurance for all operations pertain to this contract immediately upon signing contract, and agrees to indemnify and save owner and contractor harmless against all claims for damage to persons and property growing out of the execution of the work. Said insurance will be evidenced by certification filed with the contractor.

2. Sub-contractor to do all work in a first-class and workman like manner and to the entire satisfaction of the owner, contractor, and Architect.

3. The sub-contractor agrees to promptly begin said work as soon as notified by said Contractor and complete the above work as follows: START WORK WITHIN 24 HOURS AFTER NOTIFICATION AND TO COMPLETE THE WORK ABOVE WITHIN 4 MONTH CALENDAR SCHEDULE, ATTENTION IS HEREBY DIRECTED TO THE FACT THAT TIME IS OF THE ESSENCE IN THIS CONTRACT. ANY PENALTIES DUE TO THE FAILURE TO COMPLETE PROMPTLY YOUR WORK WILL BE DEDUCTED FROM YOUR FINAL PAYMENT. ANY SUB OR SUPPLIER WHO DELAYS THIS PROJECT IS SUBJECT TO LIQUIDATED DAMAGES OF $300.00 EACH DAY IN EXCESS OF COMPLETION DATE ACCORDING TO THEIR AREA OR RESPONSIBILITY.

4. Sub-contractor to remain constantly on the job during the progress of his work and have a competent foreman, approved by the contractor on the job and employ sufficient men to complete the above described work in the given time, except for delays caused by strike, Act of God, or other unforseen happenstance beyond control of Sub-contractor.

5. Sub-contractor to take proper care of all building material on the ground.

6. Sub-contractor to pay for all building materials, sidewalks and curbs wasted or damaged on the premises through his operation, and belonging to other parties.

7. Sub-contractor to make no changes or charges for extras without the written consent and agreement of the Contractor.

8. Sub-contractor to clean up and remove from ground all of his surplus materials remaining after the performance of the work in this Contract, or if not done, Contractor may remove same and charge actual cost of removal to Sub-contractor. Sub-contractor shall comply with all statutes and ordinances of any governmental agency or authority.

9. The sub-contractor hereby releases Contractor and Owner of all liability on account of any accidents during performance of work in this contract.

10. Should the sub-contractor fail to employ sufficient competent help to complete the work in the given time the Contractor may after giving forty-eight hours written notice, by letter or telegram mailed to the last known address of the Sub-contractor, employ help to complete the work and charge the same to the Sub- contractor's account and/or charge Sub-contractor any penalties due to their failure to complete on given due date. If the cost of completing said work exceeds the contract price, the Sub-

contractor herein agrees to reimburse the Contractor for any sums over and above the contract price. If the cost of completing the work does not exceed the contract price, any excess shall be paid to the Sub-contractor. If the Contractor is assessed liquidated damages by the owner for failure to complete the work on time, and if the delay has been caused by the sub-contractor herein, the sub-contractor agrees to pay the portion of the liquidated damages caused by or attributed to his failure to complete his work on time and in accordance with the working schedule.

11. This contract shall not be assigned by the Sub-contractor without the permission in writing from the Contractor. Sub-contractor to furnish to contractor and Owner a One-year written guarantee covering all defects in labor and material furnished by him unless specifications call for a longer period guarantee.

12. In event legal action is instituted by either party herein, the prevailing party shall be entitled to reasonable attorney's fees and costs.

13. If required by the Contractor the Sub-Contractor will furnish a faithful performance and Material and labor bond, in amount and through bonding company acceptable to the Contractor.

14. General Contractor has 10 days to accept in writing the terms of this contract provided that Sub-Contractor does not revoke in writing the hereinabove proposal.

IN CONSIDERATION WHEREOF, the said contractor agrees to pay to the said Sub-contractor the sum of
THIRTY THREE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($33,500.00).

for said materials and labor, said amount includes sales tax and to be paid as follows:

Progressive payments: Sub-contractor will be paid within one week of said payment to General Contractor. Provided all paper work is in order. Less a 10% retention until the project is 51% complete, then retention will be reduced to 5% for all subs provided our progress and paperwork IE: certified payroll reports, lien releases are satisfactory to the owner.

Unless otherwise provided herein, the above stated contract price will be paid in installments as progress payment. Contractor shall have the right to withhold from the Sub-contractor any payments if he fails to present satisfactory evidence that all current bills for labor and materials, or other liabilities, have been paid in connection with this sub-contract, and Contractor shall be entitled to require labor and/or material releases before any payment is made.

The final payment of(see above) which the said Contractor will pay to the said Sub-contractor 45 days after final acceptance by owner provided the sub-contractor shall have completed his work to the full satisfaction of the said Contractor, Owner and Architect.

The Contractor and Sub-contractor for themselves, their executors, successors and assigns hereby agree to the full performance of the covenants and agreement of this contract.

AAA FIRE SPRINKLER CORPORATION
1220 EAST GREG ST., UNIT #6
SPARKS, NEVADA 89431

[signature]
Sub-Contractor

License # 37953

ACCEPTANCE

The undersigned, General contractor, hereinabove referred to, accepts the terms and conditions set forth hereinabove and agrees to faithfully perform according to the same.

[signature]

DATED: 1/29/92

# EXHIBIT 2

EXHIBIT 2

COPY

Case No. 34641

Dept. No. 1

The undersigned affirms that this document does not contain any social security numbers.

LENA MCQUEEN

09 FEB 19 PM 3:17

Kenneth W. Maxwell, Esq.
Attorney for Plaintiffs

Graeme A. Reid, Esq.
Local Counsel for Plaintiffs

IN THE THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF CHURCHILL

CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS; PHILADELPHIA INDEMNITY INSURANCE COMPANY, for itself and as subrogee of Churchill Council on Alcohol & Other Drugs; CHURCHILL COUNTY; and NEVADA PUBLIC AGENCY INSURANCE POOL, for itself and as subrogee of Churchill County, a foreign insurer,

Plaintiffs,

v.

BISON CONSTRUCTION, AAA FIRE SPRINKLER, INC., ENCON-NEVADA CONSULTING ENGINEERS and DOES 1-20,

Defendants.

**COMPLAINT**

Plaintiffs for their Complaint allege as follows:

///

## Jurisdictional Allegations

1. Plaintiff Churchill Council on Alcohol and Other Drugs ("Churchill") is a Nevada non-profit corporation and at all times relevant hereto operated a drug and alcohol treatment center in Fallon, Nevada.

2. Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") is a foreign insurance company that provided property and casualty insurance to Churchill at all times relevant to the matters pleaded herein.

3. Churchill County ("County") is a government entity and is a county of the State of Nevada.

4. Nevada Public Agency Insurance Pool ("NPAIP") provided insurance coverage for the property of Churchill County at all times relevant to the matters pleaded herein.

5. Defendant Bison Construction ("Bison") is a Nevada corporation.

6. Defendant AAA Fire Sprinklers, Inc. ("AAA") is a Nevada corporation.

7. Defendant Encon-Nevada Consulting Engineers ("Encon") is an engineering firm that provided consulting service in the State of Nevada at all times relevant to the matters pleaded herein.

8. The true names and capacities, whether individual, corporate, associate, co-partnership, or otherwise of Defendants DOES 1-20 are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and therefore allege that each of the Defendants designated as DOE Defendants are responsible in some manner for the offense and happenings referred to in this action and proximately caused the damages to Plaintiffs as herein alleged. Plaintiff will request leave of Court to amend this Complaint to insert the true names and capacities of said Defendants when the same have been ascertained and allege the appropriate charging allegations.

9. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each actually and fictitiously named Defendant was the principal, agent, co-venturer, partner, surety, guarantor, officer, director and/or employee of each co-defendant and in doing the things herein alleged was acting within the scope of authority and with the permission of each co-defendant or took some part in the acts and omissions herein set forth, and by reason thereof each said Defendant is liable to Plaintiffs for the relief prayed herein.

10. Plaintiffs' damages are in excess of $10,000.

11. The events pleaded herein took place in Fallon, Nevada and this Court has jurisdiction over the dispute and the parties.

12. Venue lies in Churchill County.

General Allegations

13. In or around May 1974, Churchill leased the building and property located at 165 North Carson Street in Fallon, Nevada ("Property") from the County.

14. Churchill operated an alcohol and drug treatment center at the Property.

15. In 1996, Churchill and the County entered into a new lease, which required Churchill to construct a new wing on the building current on the Property. For purposes of this Complaint, plaintiffs will refer to the existing building as the "Old County Home" and the new wing as the "New Frontier Treatment Center" ("New Frontier").

16. The Old County Home was constructed in the 1940s and was approximately 4,000 square feet.

17. New Frontier was constructed in 1998 and added an additional 8,000 square feet.

18. Around October 1996, Churchill contracted with Bison for the construction of New Frontier.

19. Bison contracted with AAA to design and install the fire suppression sprinkler system of New Frontier.

20. Upon information and belief, AAA hired Encon to review and approve AAA's fire sprinkler designs.

21. The construction was completed on or around July 8, 1997.

22. Upon completion of the construction, Churchill immediately occupied the Old County Home and New Frontier and continuously operated there until March 26, 2007.

23. On March 26, 2007 a fire erupted in the crawl space beneath New Frontier ("Fire").

24. Because of the absence of fire suppression sprinklers in the crawl space, the Fire was not contained to the crawl space.

25. The Fire spread beyond the crawl space and caused substantial damage to New Frontier and the Old County Home in excess of $2,266,655.53.

26. Churchill submitted an insurance claim to Philadelphia for damage caused by the Fire.

27. Philadelphia determined that Churchill had insurance coverage for the damage caused by the Fire and provided insurance benefits to Churchill.

28. The County submitted an insurance claim to NPAIP for damage caused by the Fire.

29. NPAIP determined that the County had insurance coverage for the damage caused by the Fire and provided insurance benefits to NPAIP.

30. Churchill and the County have sustained damages that are not covered by insurance, including, but not limited to, their insurance deductibles.

31. Pursuant to its insurance policy with Churchill, the law and equity, and up to the amount of all payments made by it related to the Fire, Philadelphia is subrogated to Churchill's rights against third parties

responsible for the Fire.

32. Pursuant to its insurance agreement with the County, the law and equity, and up to the amount of all payments made by it related to the Fire, NPAIP is subrogated to the County's rights against third parties responsible for the Fire.

33. Philadelphia and NPAIP have paid damages in excess of $2,266,655.53 related to the Fire, but the damages are still being determined and plaintiffs seek recovery of all damages caused by the Fire.

34. Pursuant to N.R.S. § 17.130 plaintiffs are entitled to pre-judgment interest from the date of filing suit.

35. Prior to the construction of New Frontier, Nevada state law adopted NFPA 13, 1994 edition into its fire code.

36. NFPA 13 required the crawl space of New Frontier to contain fire suppression sprinklers.

37. No fire suppression sprinklers were installed in the crawl space of New Frontier.

38. The omission of fire suppression sprinklers in the crawl space of New Frontier was known or through the use of reasonable diligence should have been known to each defendant.

<u>Negligence Per Se</u>

39. The above allegations are incorporated by reference.

40. Nevada law required the installation of fire sprinklers in the crawl space of New Frontier.

41. The purpose of this law was to protect persons and property by preventing and minimizing fire spread.

42. Plaintiffs are within the class of persons who this law was intended to protect.

43. As a direct and proximate cause of defendants' violation of Nevada law, the Fire in the crawl space of New Frontier was not contained to a small area and spread throughout the buildings causing substantially more damage than would have occurred if defendants complied with Nevada law.

44. As a direct and proximate cause of defendants' negligence per se, Churchill and the County submitted insurance claims to Philadelphia and NPAIP.

## Negligence

45. The above allegations are incorporated by reference.

46. Defendant Bison owed plaintiffs a duty of care to properly supervise and inspect the construction of New Frontier, including the work of subcontractors, to make sure that the work was proper, without defect, and compliant with building codes and industry standards.

47. Defendant AAA owed plaintiffs a duty of care to properly supervise and inspect its construction work at New Frontier and to make sure that the work was proper, without defect, and compliant with building codes and industry standards.

48. Defendant Encon owed plaintiffs a duty of care to properly supervise and inspect its engineering work at New Frontier and to make sure that it was proper, without defect, and complaint with building codes and industry standards.

49. Defendants, and each of them, owed plaintiffs a duty of care to ensure that the crawl space of New Frontier contained sprinklers throughout.

50. Defendants, and each of them, breached their duties of care by failing to install fire suppression sprinklers throughout the crawl space of New Frontier.

51. The Fire originated in the crawl space of New Frontier.

52. But for the negligence of defendants, the Fire would have been contained to a small area in the crawl space of New Frontier.

53. As a direct and proximate consequence of defendants' negligence, the Fire was not contained and spread throughout New Frontier, destroying New Frontier and causing damage to the Old County Home.

54. As a direct and proximate consequence of defendants' negligence, Churchill and the County submitted insurance claims to Philadelphia and NPAIP.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

WHEREFORE, plaintiffs request judgment against defendants, and each of them, awarding plaintiffs:

A. Compensatory damages in an amount to be proved at trial;

B. Pre-judgment interest pursuant to N.R.S. § 17.130;

C. Post-judgment interest at the prevailing rate;

D. Costs of action;

E. Attorneys' fees; and

F. Any additional or further relief that this Court deems warranted under the circumstances.

DATED this 19th day of February, 2009.

BAUMAN LOEWE WITT & MAXWELL, PLLC

Kenneth W. Maxwell, Esq.
Nevada Bar No. 9389
8765 E. Bell Road, Suite 204
Scottsdale, AZ 85260
Telephone: (480) 502-4664
Facsimile: (480) 502-4774
*Attorneys for Plaintiffs*

Graeme A. Reid, Esq.
Nevada Bar No. 10970
WATSON ROUNDS
5371 Kietzke Lane
Reno, NV 89511
Telephone: (800) 977-7577
Facsimile: (775) 338-8171
*Local counsel for Plaintiffs*

EXHIBIT 3

EXHIBIT 3

FILED
2010 DEC 16 AM 10:41
KELLY G. HELTON
COUNTY CLERK
SHELLIE
BY HOOTEN DEPUTY

Case No. 34641

Dept. No. 1

The undersigned affirms that this document does not contain any social security numbers.

IN THE THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF CHURCHILL

CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS; PHILADELPHIA INDEMNITY INSURANCE COMPANY, for itself and as subrogee of Churchill Council on Alcohol & Other Drugs; CHURCHILL COUNTY; and NEVADA PUBLIC AGENCY INSURANCE POOL, for itself and as subrogee of Churchill County, a foreign insurer,

Plaintiffs,

v.

BISON CONSTRUCTION; AAA FIRE SPRINKLER, INC.; ENCON-NEVADA CONSULTING ENGINEERS; and DOES 1-20,

Defendants.

---

BISON CONSTRUCTION,

Cross-Claimant,

v.

AAA FIRE SPRINKLER, INC.; ENCON-NEVADA CONSULTING ENGINEERS; DOES 1-20; and ROE CORPORATIONS 1-20,

Cross-Defendants.

**STIPULATED JUDGMENT AGAINST BISON CONSTRUCTION**

Plaintiffs' claims against BISON CONSTRUCTION having come before the Court, Honorable David A. Huff, and the issues having been decided by stipulation between Bison

Construction and Plaintiffs,

IT IS HEREBY ORDERED AND ADJUDICATED:

That plaintiffs, Churchill Council on Alcohol and Other Drugs, Philadelphia Indemnity Insurance Company, Churchill County and Nevada Public Agency Insurance Pool recover of Bison Construction the sum of $1,299,064.74 plus pre-judgment interest of $120,145.69 plus costs of $18,140.14 for a total of $1,437,350.57, with interest thereon as set forth in N.R.S. § 17.130.

DATED this 16th day of December, 2010.

/s/ David A. Huff

Honorable David A. Huff

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. EDCV 05-737 AHM (SGLx) Date August 30, 2006

Title NORTH AMERICAN CAPACITY INSURANCE CO. v. MT. HAWLEY INSURANCE CO., et al.

DOCKETED ON CM
AUG 30 2006
BY 077

Present: The Honorable A. Howard Matz

| Stephen Montes | N/A | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| No Appearance | No Appearance |

**Proceedings:** In Chambers

## I. INTRODUCTION

Plaintiff North American Capacity Insurance Company (NAC) sued Defendants Royal Surplus Lines Insurance Company (Royal) and Mt. Hawley Insurance Company (Mt. Hawley) for declaratory relief regarding both Defendants' denials of coverage for third party liability claims brought against a co-insured, a general contractor named William C. Buster, Inc. (Buster). These claims, which arise out of several cases in state court (the "underlying litigation"), involve personal injury and property damage due to building conditions in an apartment building in Temecula, California that was constructed by Buster in 1982.

Plaintiff has filed a Motion for Summary Adjudication[1] on its First and Second causes of action against Mt. Hawley and its Fifth and Sixth Causes of Action against Royal. The two claims against each Defendant are for declaratory relief that both Royal and Mt. Hawley have a duty to defend Buster and that both insurers also have a duty to indemnify Buster.

The Court DENIES the Motion as to both Royal and Mt. Hawley's duties to indemnify. NAC did not present any arguments on these claims in its Motion, and, as there is no evidence that the underlying litigation has concluded, this issue is not ripe for adjudication.

62

[1]Docket No. 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. EDCV 05-737 AHM (SGLx) Date August 30, 2006

Title NORTH AMERICAN CAPACITY INSURANCE CO. v. MT. HAWLEY INSURANCE CO., et al.

For the reasons stated below, the Court GRANTS the Motion as to both Royal and Mt. Hawley's duties to defend, but only as to the limited bases addressed in NAC's Motion, namely Royal's denial of coverage based on the "Fungi or Bacteria" exclusion and Mt. Hawley's denial of coverage based on Buster's failure to comply with the "Contractors-Conditions of Coverage" Endorsement. This Order does not address any other possible bases for which either Royal or Mt. Hawley may have denied coverage.[2] NAC may address these bases in a later motion for summary adjudication. If NAC chooses to file a later motion, it shall update the Court on the status of the underlying litigation.

## II. DUTY TO DEFEND

The Court applies the broad principles regarding the duty to defend. *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275, (1966); *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1080 (1993); *Montrose Chem. Corp. v. Super. Court*, 6 Cal. 4th 287, 300 (1993).

### A. Royal's Duty to Defend

Royal denied coverage, in part, based on the "Fungi or Bacteria" exclusion in its policy with Buster. However, this exclusion, alone, does not entitle Royal to decline to defend Buster in the underlying litigation. Several paragraphs in the second amended complaint filed in the underlying litigation indicate that the plaintiffs in that case may have claims for water damage exclusive of mold. (*See Kleinschmidt* SAC ¶38-40). In these paragraphs, the plaintiffs refer to "water intrusion," leaking, moisture intrusion, "moisture damage," and "water damage" and allege that the "building envelope was not water tight." (*Id.*). This creates a "potential for coverage" and triggers a duty to defend. *See Montrose Chem. Corp. v. Super. Court*, 6 Cal. 4th 287, 300 (1993). Royal has not

[2]For example, in Royal's denial of coverage letter it also stated that even if the personal injury or property damage fell outside the mold exclusion, Buster would not be entitled to coverage because the facts indicated that Buster had knowledge of the claims prior to the inception of the Royal Policy. (In the underlying litigation, the plaintiffs alleged that they first reported claims as early as 1998. However, Royal did not issue Buster's policy until July 1, 2002.) (May 10, 2005 Denial of Coverage Letter, Pl. Ex. QQ at 7).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. EDCV 05-737 AHM (SGLx) Date August 30, 2006

Title NORTH AMERICAN CAPACITY INSURANCE CO. v. MT. HAWLEY INSURANCE CO., et al.

shown that there is no potential for coverage or that there is no continuing duty to investigate whether there may be a potential for coverage in the future. *See Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1113-1114 (1995) (citing *Montrose*, 6 Cal. 4th at 295-296). Therefore, Royal cannot avoid its duty to defend Buster in the underlying litigation based on the Fungi or Bacteria Exclusion.

**B. Mt. Hawley's Duty to Defend**

Mt. Hawley denied coverage, in part, based on the "Contractors-Conditions of Coverage" Endorsement ("CCC Endorsement") in Buster's Policy. The same broad principles of the duty to defend apply to Mt. Hawley's denial of coverage.

1. *Scottsdale Insurance Company v. Essex Insurance Company*

Mt. Hawley argues that the court's holding in *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86 (2002) precludes coverage here.

The current action is distinguishable from *Scottsdale* in three ways. First, in *Scottsdale*, the insurer issued its policy before the contractor completed the house. However, here Buster completed the apartment building about twenty years prior to the date when Mt. Hawley issued its policy. Second, the twenty years between the completion of the apartments (1982) and the inception dates of the Mt. Hawley policy (2003) are considerably greater than the overlapping dates in *Scottsdale*. (SUF 2 and 30). In *Scottsdale*, although the contractor initiated his policy with the insurer on February 15, 1991, the court found it reasonable for him to obtain certificates of insurance from his subcontractors, even though construction on the house was nearly complete. *Scottsdale Ins. Co.*, 98 Cal. App. 4th at 96. Here, the passage of twenty-one years makes it unreasonable to require Buster to be able to track down the subcontractors for the apartment and obtain the necessary insurance certificates. Finally, unlike in *Scottsdale*, the Quehl letter of July 8, 2003 that transmitted the Mt. Hawley policy requested copies of Buster's *current* subcontractor agreements but did not request agreements for past projects, suggesting that Mt. Hawley did not intend the CCC Endorsement to apply to completed projects.

Based on the above analysis, *Scottsdale* addresses conditions precedent to a not-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. EDCV 05-737 AHM (SGLx) Date August 30, 2006

Title NORTH AMERICAN CAPACITY INSURANCE CO. v. MT. HAWLEY INSURANCE CO., et al.

yet-completed project, whereas here the apartment is a completed project. Therefore, *Scottsdale* does not require that the court find that the CCC Endorsement applies to completed projects.

**2. Under Each Part of the Three-Step Analysis of the Policy, Mt. Hawley Has a Duty to Defend Buster**

NAC argues that the CCC Endorsement does not bar Buster's claim because the language of the Endorsement makes clear that it does not apply to projects completed before the policy period. Mt. Hawley disagrees and argues the Endorsement *does* apply to past projects. To resolve any ambiguity in the Mt. Hawley policy, the Court applies a three-step analysis to interpret the Mt. Hawley insurance policy. *See* Croskey & Kaufman, *California Practice Guide: Insurance Litigation* § 4.4 (2005) (hereinafter "Rutter Guide: Insurance")(citing *Bank of the West v. Sup. Ct. (Industrial Indem. Co.)*, 2 Cal. 4th 1254, 1264 (1992), explaining three-part analysis and noting that these steps should be performed in sequence); *AIU Insurance Co. v. FMC Corp.*, 51 Cal.3d 807 (1990).

The plain meaning of the CCC Endorsement indicates it does not apply to Buster's *completed* projects. The CCC Endorsement includes the verb "will," which is in the future tense. For example, the first two conditions state: 1) "Insured *will* obtain certificates of insurance . . . from all subcontractors prior to commencement of any work performed for the insured" and 2) "Insured *will* confirm that the subcontractors insurance policies are valid and have not been cancelled prior to the commencement of any work." (SUF 39)(emphasis added). A plain meaning reading of this CCC Endorsement does not suggest that an insured could have known these precise conditions and satisfied them before commencement of work in 1982. Reading these CCC Endorsement as applying to work ongoing at and subsequent to the coverage period under the Mt. Hawley policy is reasonable.

Even if the Court were to find that a plain reading of the contract language did not clear up the ambiguity, Buster's objectively reasonable belief was that the Mt. Hawley policy covered completed projects. *See AIU Insurance Co.*, 51 Cal.3d at 821-2. The Mt. Hawley policy includes a products-completed operations hazard clause. (Ex. A at 9, 13, 17). Such clauses provide coverage for accidental bodily injury or property damage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. EDCV 05-737 AHM (SGLx) Date August 30, 2006

Title NORTH AMERICAN CAPACITY INSURANCE CO. v. MT. HAWLEY INSURANCE CO., et al.

following completion of the insured's work or operations. This clause also covers liability incurred by contractors after a job has been completed. Rutter Guide: Insurance § 7:1429. Because this is the standard purpose of the products-completed clause in ISO CGL insurance forms, the Court can infer that Buster expected the clause to cover its past projects. *Id.* Moreover, as the apartment building was completed in 1982, it satisfies the policy's definition of a completed product. (Ex. A at 17). Based on the products-completed clause and the plain language of the CCC Endorsement, Buster would have had an objectively reasonable expectation that the policy would cover past projects.

Even if ambiguity persists in the contract, the Court will construe the language against the party who caused the uncertainty to exist. *AIU Insurance Co.*, 51 Cal.3d at 821-2. Here, Mt. Hawley issued the CGL policy on a standard ISO form with no written modifications. Based on this, Mt. Hawley caused the uncertainty to exist, and the court construes the policy against Mt. Hawley and in favor of coverage. Therefore as the CCC Endorsement does not apply to Buster's completed projects, the policy is enforceable and Mt. Hawley has a duty to defend Buster.

## III. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion as to both Royal and Mt. Hawley's duty to defend, but only as to the limited bases addressed above. The Court DENIES the Motion as to Royal and Mt. Hawley's duties to indemnify.

No hearing is necessary. Fed. R. Civ. P. 78; L.R. 7-15.

_____ : _____

Initials of Preparer AMO

EXHIBIT 4

EXHIBIT 4

FILED
CLERK, U.S. DISTRICT COURT
NOV 21 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

A. Carl Yaeckel, Esq.
David E. Hallett, Esq.
GRIMM VRANJES MCCORMICK & GRAHAM
550 West C Street, Suite 1100
P.O. Box 129012
San Diego, CA 92112-9012
Telephone: (619) 231-8802
Facsimile: (619) 233-6039
E-Mail: dhallett@gvmglaw.com

Attorneys for Plaintiff
NORTH AMERICAN CAPACITY INSURANCE COMPANY

Priority ✓
Send ✓
Enter
Closed ✓
JS-5/JS-6
JS-2/JS-3
Scan Only

**BY FAX**

Michael W. Melendez, Esq.
Mark S. Jones, Esq.
MELENDEZ & VACA, LLP
1850 Mt. Diablo Blvd., Suite 470
Walnut Creek, CA 94596
Telephone: (925) 256-8706
Facsimile: (925) 256-6761
E-Mail: mjones@mvlawgroup.com

LODGED
CLERK, U.S. DISTRICT COURT
NOV 15 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Attorneys for Defendant
MT. HAWLEY INSURANCE COMPANY

Linda Tai Hoshide, Esq. (SBN: 190403)
Christian D. Molloy, Esq. (SBN: 237035)
TRESSLER, SODERSTROM, MALONEY & PRIESS
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067-6006
Telephone: (310) 203-4800
Facsimile: (310) 203-4850
E-Mail: lmorrison@tsmp.com / cmolloy@tsmp.com

Attorneys for Defendant
ROYAL SURPLUS LINES INSURANCE COMPANY

///

///



DOCKETED ON CM
NOV 22 2006
BY 010

64

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SCANNED

NORTH AMERICAN CAPACITY INSURANCE COMPANY,

Plaintiff,

v.

MT. HAWLEY INSURANCE COMPANY, et al.,

Defendants.

Case No.: EDCV 05-737 AHM (SGLx)

**STIPULATION FOR DISMISSAL, WITHOUT PREJUDICE, OF MT. HAWLEY INSURANCE COMPANY AND ROYAL SURPLUS LINES INSURANCE COMPANY**

**Trial Date: December 13, 2006**
**Complaint Filed: June 13, 2005**

IT IS HEREBY STIPULATED AND AGREED, pursuant to Federal Rules of Civil Procedure, Rule 41 (a)(1), by and between the parties to this action, through their designated counsel, as follows:

1. This action was commenced on June 13, 2005 in the Riverside County, California Superior Court and removed to the United States District Court for the Central District of California on or about August 9, 2005.

2. This action is not a class action; a receiver has not been appointed; and the action is not governed by any statute of the United States that requires order of the Court for dismissal.

3. That Plaintiff North American Capacity Insurance Company filed a Motion for Summary Judgment against Defendant ROYAL SURPLUS LINES INSURANCE COMPANY ("Royal") and Defendant MT. HAWLEY INSURANCE COMPANY ("Mt. Hawley"). That this court granted, in part, NAC's Motion for Summary Judgment and both Royal and Mt. Hawley have

acknowledged and accepted the duty to defend William C. Buster, Inc. in relation to the underlying litigation, subject to reservation of rights.

4. As such, this action is dismissed in its entirety, without prejudice. None of the parties have sought prior dismissal of this action and the parties specifically agree that each of them preserves the right to file further action against one another in the event future disputes arise.

5. Each party to bear their own fees and costs.

IT IS SO STIPULATED.

Dated: November 13 2006 TRESSLER, SODERSTROM, MALONEY &PRIESS

By: [signature]
Linda Tai Hoshide
Christian D. Molloy
Attorneys for Defendant ROYAL SURPLUS LINES INSURANCE COMPANY

Dated: November ___, 2006 GRIMM VRANJES MCCORMICK & GRAHAM

By: ______________________
A. Carl Yaeckel
David E. Hallett
Attorneys for Plaintiff NORTH AMERICAN CAPACITY INSURANCE COMPANY

Dated: November ___, 2006 MELENDEZ & VACA, LLP

By: ______________________
Michael W. Melendez
Mark S. Jones
Attorneys for Defendant MT. HAWLEY INSURANCE COMPANY



IT IS SO ORDERED
Dated November 17, 2006
[signature]
United States District Judge

acknowledged and accepted the duty to defend William C. Buster, Inc. in relation to the underlying litigation, subject to reservation of rights.

4. As such, this action is dismissed in its entirety, without prejudice. None of the parties have sought prior dismissal of this action and the parties specifically agree that each of them preserves the right to file further action against one another in the event future disputes arise.

5. Each party to bear their own fees and costs.

IT IS SO STIPULATED.

Dated: November___, 2006 TRESSLER, SODERSTROM, MALONEY &PRIESS

By: ______________________
Linda Tai Hoshide
Christian D. Molloy
Attorneys for Defendant ROYAL SURPLUS LINES INSURANCE COMPANY

Dated: November 15, 2006 GRIMM VRANJES MCCORMICK & GRAHAM

By: ______________________
A. Carl Yaeckel
David B. Hallett
Attorneys for Plaintiff NORTH AMERICAN CAPACITY INSURANCE COMPANY

Dated: November ___, 2006 MELENDEZ & VACA, LLP

By: ______________________
Michael W. Melendez
Mark S. Jones
Attorneys for Defendant MT. HAWLEY INSURANCE COMPANY

SCANNED

acknowledged and accepted the duty to defend William C. Buster, Inc. in relation to the underlying litigation, subject to reservation of rights.

4. As such, this action is dismissed in its entirety, without prejudice. None of the parties have sought prior dismissal of this action and the parties specifically agree that each of them preserves the right to file further action against one another in the event future disputes arise.

5. Each party to bear their own fees and costs.

IT IS SO STIPULATED.

Dated: November___, 2006 TRESSLER, SODERSTROM, MALONEY &PRIESS

By: ______________________
Linda Tai Hoshide
Christian D. Molloy
Attorneys for Defendant ROYAL SURPLUS LINES INSURANCE COMPANY

Dated: November___, 2006 GRIMM VRANJES MCCORMICK & GRAHAM

By: ______________________
A. Carl Yaeckel
David E. Hallett
Attorneys for Plaintiff NORTH AMERICAN CAPACITY INSURANCE COMPANY

Dated: November 13, 2006 MELENDEZ & VACA, LLP

By: [signature]
Michael W. Melendez
Mark S. Jones
Attorneys for Defendant MT. HAWLEY INSURANCE COMPANY

GRIMM VRANJES McCORMICK & GRAHAM LLP
550 West C Street, Suite 1100
San Diego, California 92101
TEL: (619) 231-8802; FAX: (619) 233-6039
Attorneys for Plaintiff NAC

SCANNED

NAC v. Mt. Hawley Insurance Company.

Case No. EDCV 05-00737-SGL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

# DECLARATION OF SERVICE

I declare that I am over the age of 18 years and not a party to the case; I am employed in the County of San Diego, California, where the mailing occurs; and my business address is 550 West C Street, Suite 1100, San Diego, California 92101. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business. I caused to be served the following document(s):

STIPULATION FOR DISMISSAL, WITHOUT PREJUDICE, OF MT. HAWLEY INSURANCE COMPANY AND ROYAL SURPLUS LINES INSURANCE COMPANY

on the parties in this action addressed as follows:

**SEE ATTACHED SHEET**

_X_ BY MAIL: By placing a true copy of the above-listed document(s) in a separate envelope addressed to each addressee, respectively, as indicated above on November 15, 2006. It is deposited with the U.S. Postal Service on the same day

___ BY OVERNIGHT MAIL: I placed a true copy thereof in a separate envelope for each addressee as indicated above on November 15, 2006. It is deposited with Federal Express on the same day.

___ BY PERSONAL SERVICE: I placed a true copy of the above-listed document(s) in a separate envelope addressed to each addressee, respectively, as indicated above and had such envelope personally delivered to the offices of the addressee on November 15, 2006.

___ BY PERSONAL SERVICE VIA FACSIMILE: By use of facsimile machine telephone number (619) 233-6039, I served a copy of the above-listed document(s) to the offices of the addressee on November 15, 2006 by transmitting by facsimile machine. The facsimile machine I used complied with California Rules of Court Rule 2004, and no error was reported by the machine. Pursuant to California Rules of Court Rule 2006(d), I caused the machine to print a transmission record of the transmission.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 15, 2006, at San Diego, California.

FAITH E. CONSEUR

SCANNED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
NAC v. Mt. Hawley Insurance Company.
Case No. EDCV 05-00737-SGL
Page 2

## DECLARATION OF SERVICE

<u>Attorneys for Royal Surplus Lines</u>
Linda Tai Hoshide
Tressler Soderstrom et al
1901 Ave Of The Stars #450
Los Angeles, CA 90067
Tel:310-203-4800
Fax:310-203-4850

<u>Attorneys for Mt. Hawley Ins. Co.</u>
Michael W. Melendez /Mark S. Jones
Melendez & Vaca, LLP
1850 Mt. Diablo Boulevard, Ste 440
Walnut Creek, CA. 94596
Tel: 925-256-8706
Fax: 925-256-6761